Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/28/2020 09:09 AM CDT

State of Nebraska, appellant, v.
Richard A. Fredrickson, appellee.

___ N.W.2d ___

Filed June 5, 2020.    No. S-19-1083.

1. **Judgments: Jurisdiction: Appeal and Error.** Determination of a juris-
dictional issue which does not involve a factual dispute is a matter of
law which requires an appellate court to reach its conclusions indepen-
dent from a trial court.
2. **Jurisdiction: Appeal and Error.** Before reaching the legal issues
presented for review, it is the duty of an appellate court to determine
whether it has jurisdiction over the matter before it.
3. **Courts: Jurisdiction: Legislature: Appeal and Error.** In order to have
jurisdiction over an appeal, appellate jurisdiction must be specifically
provided by the Legislature.
4. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court
to acquire jurisdiction of an appeal, the party must be appealing from a
final order or a judgment.
5. **Criminal Law: Judgments: Sentences: Appeal and Error.** In a crimi-
nal case, the judgment from which the appellant may appeal is the
sentence.
6. **Judgments: Words and Phrases.** Every direction of the court made or
entered in writing and not included in a judgment is an order.
7. **Final Orders: Appeal and Error.** In order to be a final order which
an appellate court may review, the lower court's order must (1) affect
a substantial right and determine the action and prevent a judgment,
(2) affect a substantial right and be made during a special proceeding,
(3) affect a substantial right and be made on summary application in an
action after a judgment is rendered, or (4) deny a motion for summary
judgment which was based on the assertion of sovereign immunity or
the immunity of a government official.
8. **Final Orders.** The first step in a final order analysis under Neb. Rev.
Stat. § 25-1902 (Supp. 2019) is to determine whether the order affected
a substantial right of one or more parties.

9. _____. Whether an order affects a substantial right focuses on whether the right at issue is substantial and whether the court's order has a substantial impact on that right.

10. _____. Whether an order affects a substantial right depends on whether it affects with finality the rights of the parties in the subject matter. It also depends on whether the right could otherwise effectively be vindicated.

11. **Final Orders: Appeal and Error.** An order affects a substantial right when the right would be significantly undermined or irrevocably lost by postponing appellate review.

Appeal from the District Court for Washington County: John E. Samson, Judge. Appeal dismissed.

M. Scott Vander Schaaf, Washington County Attorney, and, on brief, Desirae M. Solomon for appellant.

No appearance for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## INTRODUCTION

The State attempts to appeal from the district court's order allowing the defendant to proceed in forma pauperis with his criminal appeal. The defendant filed an application, pursuant to Neb. Rev. Stat. § 29-2306 (Reissue 2016), to proceed in forma pauperis in his criminal appeal. The district court granted the application, ordering, pursuant to § 29-2306 and Neb. Rev. Stat. §§ 25-2305 and 25-2306 (Reissue 2016), that the defendant did not have to pay the docket fees and costs associated with production of the transcript and bill of exceptions. The State now challenges that determination. The direct appeal was affirmed by the Nebraska Court of Appeals on May 26, 2020,[1] but the mandate setting forth the total amount of fees or costs due to the appellate court has not yet been issued in that appeal.

---

[1] *State v. Fredrickson*, No. A-19-633, 2020 WL 2643875 (Neb. App. May 26, 2020) (selected for posting to court website).

## BACKGROUND

Richard A. Fredrickson was charged by amended information with several robbery-related charges in Washington County. On April 16, 2018, the county court ordered that Fredrickson was "adjudged indigent," despite Fredrickson's failure to file a poverty affidavit, and counsel was appointed to represent Fredrickson at the county's expense. The case was then moved to district court, where Fredrickson entered a no contest plea to robbery in exchange for the State's dismissing the remaining counts.

Subsequently, the State filed a motion to determine Fredrickson's indigent status, noting Fredrickson's failure to file the poverty affidavit and alleging Fredrickson may have sufficient funds to compensate the county for legal work performed. The State also filed a motion to dispose of property, requesting the sale of Fredrickson's impounded vehicle allegedly used in the commission of the robbery. The State asked that any funds acquired from such sale be directed by the court to reimburse the county for Fredrickson's representation.

On June 4, 2019, immediately prior to sentencing, a hearing was held on the State's two motions. At the hearing, the State pointed out that the county court had appointed counsel for Fredrickson without receiving any evidence of his financial status. Although Fredrickson admitted he had failed to submit a poverty affidavit, he completed a new form and submitted it at the hearing.

Fredrickson's affidavit indicated that he had $22,000 in assets, his vehicle was worth $9,000, and he had a bank account with a $13,000 balance. The affidavit also indicated that Fredrickson was obligated to pay child support in the amount of $100 per month for each of his two children. According to Fredrickson, his savings were being managed by his "power of attorney person" for the continued payment of child support. The court ordered Fredrickson's impounded vehicle to be sold and the proceeds used to reimburse the county for legal fees due to the appointment of legal counsel and for court costs. In the event the sale of the vehicle produced insufficient funds to

cover the court costs and attorney fees, the court denied the State's request for further reimbursement from Fredrickson's savings and other available assets.

On June 4, 2019, Fredrickson was sentenced to a term of 20 to 38 years of incarceration. Fredrickson filed his notice of appeal of his conviction and sentence on July 1, and filed a pro se motion for appointment of appellate counsel the same day. Along with his motion, Fredrickson filed a new financial affidavit in which he claimed he had $10,000 to $14,000 in a bank account that was to be used "solely for payments of child support to maintain current status." The affidavit stated this child support was $200 per month.

The State filed an objection to Fredrickson's alleged indigent status. A hearing was held on Fredrickson's motion for appointment of appellate counsel and the State's objection. During the hearing, the State submitted a real estate transfer statement concerning a property in which Fredrickson was indicated to have a one-half interest and which sold for $180,000 in July 2018.

Fredrickson conceded that the property, which he owned with his father, was sold and that he received about $80,000 from the sale. Fredrickson explained that he was incarcerated during and since the sale of the property so the person holding his power of attorney had made expenditures from the sale's funds for "any financial things that I would have had to have taken care of, anything like that, children, holidays, whatever, has been taken care of out of that." Fredrickson testified that the $10,000 to $14,000 listed on his financial affidavit was what was left of the $80,000 after those expenses. Fredrickson also clarified that his child support obligation may have changed since the filing of his affidavit and is at least $100 per month and at most $200 per month.

On July 12, 2019, the district court entered an order finding Fredrickson was entitled to court-appointed appellate counsel according to the information contained within his financial affidavit. As such, the court appointed to Fredrickson appellate counsel at the county's expense. The court explained that

Fredrickson was advised, in the event the financial affidavit contained incorrect information, he may be ordered to reimburse the county for his appellate attorney fees.

On July 30, 2019, the State filed a notice of appeal of the July 12 order finding Fredrickson entitled to court-appointed appellate counsel. In *State v. Fredrickson (Fredrickson I)*,[2] we held that we had no jurisdiction over the State's interlocutory appeal, as it did not affect a substantial right. During the pendency before our court of the State's interlocutory appeal from the court's order finding Fredrickson entitled to court-appointed appellate counsel, Fredrickson filed, on October 11, an application to proceed with his appeal from the conviction and sentence in forma pauperis. This application contained the same information presented in Fredrickson's affidavit at the July hearing, along with a copy of the court's July 12 order appointing appellate counsel.

On October 15, 2019, the court, without a hearing, granted Fredrickson's application to file his appeal in forma pauperis, stating that in accordance with § 29-2306, Fredrickson was not required to pay docket fees or costs incurred in the production of the transcript and bill of exceptions.

On November 14, 2019, the State filed a notice of appeal from the October 15 order allowing Fredrickson to proceed in forma pauperis, which is the purported appeal presently before us. The State filed a "Motion to Vacate and Objection to Defendant's Application to Proceed in Forma Pauperis" that same date. The State's motion claimed that the State was unaware of the application and did not receive an opportunity to present evidence showing that Fredrickson could afford the costs of his appeal. The district court, after a hearing where the parties stipulated that the evidence of indigency would have been the same as was provided to the trial court at a previous hearing, found Fredrickson indigent and ordered the county responsible for payment of attorney fees, filing fee, bill of exceptions, and other costs of the action.

---

[2] *State v. Fredrickson*, 305 Neb. 165, 939 N.W.2d 385 (2020).

## ASSIGNMENTS OF ERROR

The State assigns as error the district court's approval of Fredrickson's application to proceed in forma pauperis. Specifically, the State argues that the district court abused its discretion by ordering the county to pay Fredrickson's appeal costs when Fredrickson did not provide evidence of his financial situation to the county court, he acquired an additional $80,000 of cash during the trial, and his affidavit indicated he had sufficient assets to pay for his appeal.

## STANDARD OF REVIEW

[1] Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court.[3]

## ANALYSIS

[2-4] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[4] In order to have jurisdiction over an appeal, appellate jurisdiction must be specifically provided by the Legislature.[5] For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.[6]

[5,6] In a criminal case, the judgment from which the appellant may appeal is the sentence, and every direction of the court made or entered in writing and not included in a judgment is an order.[7] Thus, the order granting Fredrickson's application to proceed in forma pauperis was an order.

[7] When the statutory scheme governing the proceedings does not specifically address the finality of orders issued

---

[3] *Fredrickson I, supra* note 2.

[4] *Id.*

[5] *Id.*

[6] *Id.* See Neb. Rev. Stat. § 25-1911 (Reissue 2016).

[7] *Fredrickson I, supra* note 2.

therein, final orders are governed by the general definitions set forth by Neb. Rev. Stat. § 25-1902 (Supp. 2019).[8] In order to be a final order which an appellate court may review, the lower court's order must (1) affect a substantial right and determine the action and prevent a judgment, (2) affect a substantial right and be made during a special proceeding, (3) affect a substantial right and be made on summary application in an action after a judgment is rendered, or (4) deny a motion for summary judgment which was based on the assertion of sovereign immunity or the immunity of a government official.[9]

The statutes governing in forma pauperis proceedings[10] specifically provide a defendant whose application is denied the right to appeal.[11] Section 25-2301.02 provides that if an objection to the defendant's application to proceed in forma pauperis is sustained, the party filing the application shall have 30 days after the ruling or issuance of the statement to proceed with an action or appeal upon payment of fees, costs, or security notwithstanding the subsequent expiration of any statute of limitations or deadline for appeal. Section 25-2301.02 also provides for the means of obtaining a transcript for the appeal and the appellate court's standard of review:

> In the event that an application to proceed in forma pauperis is denied and an appeal is taken therefrom, the aggrieved party may make application for a transcript of the hearing on in forma pauperis eligibility. Upon such application, the court shall order the transcript to be prepared and the cost shall be paid by the county in the same manner as other claims are paid. The appellate court shall review the decision denying in forma pauperis eligibility de novo on the record based on the transcript of the hearing or the written statement of the court.

---

[8] See *Priesner v. Starry*, 300 Neb. 81, 912 N.W.2d 249 (2018).

[9] *Fredrickson I, supra* note 2. See Neb. Rev. Stat. § 25-1902 (Supp. 2019).

[10] Neb. Rev. Stat. § 25-2301 et seq. (Reissue 2016).

[11] See § 25-2301.02.

Notably absent from the statutes governing in forma pauperis is any reference to the ability to appeal the approval of such an application.[12] Assuming without deciding here that the Legislature did not intend to deny any opportunity to appeal from an order granting a defendant's application to proceed in forma pauperis with a criminal appeal, the order appealed from here is not final under § 25-1902. This is because the order granting Fredrickson's application to proceed in forma pauperis did not affect with finality a substantial right.

[8-11] The first step in a final order analysis under § 25-1902 is to determine whether the order affected a substantial right of one or more parties. The inquiry focuses on whether the right at issue is substantial and whether the court's order has a substantial impact on that right.[13] Whether an order affects a substantial right depends on whether it affects with finality the rights of the parties in the subject matter.[14] It also depends on whether the right could otherwise effectively be vindicated.[15] An order affects a substantial right when the right would be significantly undermined or irrevocably lost by postponing appellate review.[16]

In *Fredrickson I*, we stated that because the county filed a notice of appeal as though it were taking an ordinary appeal under § 25-1902 and Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2018), we would analyze jurisdiction according to the ordinary principles of appellate jurisdiction just recited. We then explained that the order finding that Fredrickson was indigent and entitled to appellate counsel did not affect a substantial right and thus was not final under § 25-1902.

We reasoned that the order did not affect a substantial right because it did not obligate the county to pay any specific

---

[12] § 25-2301 et seq.

[13] *Fredrickson I, supra* note 2.

[14] *Id.*

[15] *Id.*

[16] *Id.*

amount or set a deadline for payment—matters that would be subject to future proceedings addressing the question of reasonable attorney fees. We also noted that the order was not a final determination obligating the payment of Fredrickson's appellate attorney fees, because Fredrickson's indigency can subsequently be challenged through Neb. Rev. Stat. § 29-3908 (Reissue 2016), which provides:

> Whenever any court finds subsequent to its appointment of . . . counsel to represent a felony defendant that its initial determination of indigency was incorrect or that during the course of representation by appointed counsel the felony defendant has become no longer indigent, the court may order such felony defendant to reimburse the county for all or part of the reasonable cost of providing such representation.

Thus, we explained that "even though the order appointing appellate counsel specified that it is at the [c]ounty's expense, the State is able to seek reconsideration and can challenge the underlying finding of indigency and recoup any subsequently expended funds from the defendant."[17] We rejected the county's argument that such an avenue would not effectively vindicate its rights because it is difficult to recoup money from incarcerated criminal defendants. We said:

> Although recovery of attorney fees may be, at times, difficult, the Nebraska Legislature has specified the process for determination of the [c]ounty's rights and recovery of funds when there is a subsequent modification of an indigency finding. This argument is insufficient to show a significant undermining of the State's right.[18]

Similarly, the order granting Fredrickson's application to proceed in forma pauperis with his appeal was not a final determination of the amount the county must pay in fees and costs for Fredrickson's appeal. Pursuant to § 25-2301, "[i]n

[17] *Id.* at 173, 939 N.W.2d at 391.

[18] *Id.* at 174, 939 N.W.2d at 391.

forma pauperis" simply means "permission given by the court for a party to proceed without prepayment of fees and costs or security."

The mandate setting forth the total amount of such fees or costs due has not yet been issued in Fredrickson's direct appeal. Until the county is ordered to pay a specific sum, its substantial rights have not been affected. Thus, the order granting Fredrickson's application to proceed in forma pauperis was not a final order and we lack jurisdiction to consider this appeal.

We also note for completeness that whether the in forma pauperis order was properly granted or not does not affect the perfection of Fredrickson's criminal appeal. We have explained that an in forma pauperis appeal is perfected when the appellant timely files a notice of appeal and an affidavit of poverty.[19] Thus, the question of whether the application was properly granted may alter who is responsible for some of the fees associated with the appeal, but it cannot divest the court of jurisdiction to consider Fredrickson's appeal of his sentence.[20] We find that appeals from an order approving an application to proceed in forma pauperis and appeals of awards of attorney fees should be treated similarly in this regard.[21]

## CONCLUSION

The order granting Fredrickson the right to proceed with his criminal appeal in forma pauperis is not a judgment nor is it a final order. Accordingly, we lack jurisdiction to consider this appeal and it is dismissed.

Appeal dismissed.

[19] *State v. Jones*, 264 Neb. 671, 650 N.W.2d 798 (2002). See, also, *Glass v. Kenney*, 268 Neb. 704, 687 N.W.2d 907 (2004).

[20] See, generally, *Jones, supra* note 19; *In re Interest of N.L.B.*, 234 Neb. 280, 450 N.W.2d 676 (1990); *In re Interest of Noelle F. & Sarah F.*, 3 Neb. App. 901, 534 N.W.2d 581 (1995).

[21] *In re Claim of Rehm and Faesser*, 226 Neb. 107, 410 N.W.2d 92 (1987).