Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/08/2021 09:08 AM CST

Robert H. Cinatl, appellant, v. Karen R. Prososki,
Personal Representative of the Estate of Robert
R. Prososki, deceased, and Karen R. Prososki,
individually and as beneficiary of the Estate
of Robert R. Prososki, deceased, appellee.

___ N.W.2d ___

Filed October 16, 2020.    No. S-19-972.

1. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.
2. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.
3. **Arbitration and Award: Appeal and Error.** In reviewing a decision to vacate, modify, or confirm an arbitration award, an appellate court is obligated to reach a conclusion independent of the trial court's ruling as to questions of law. However, the trial court's factual findings will not be set aside on appeal unless clearly erroneous.
4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
5. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.
6. **Judgments: Final Orders: Words and Phrases.** A judgment is the final determination of the rights of the parties in an action.
7. **Judgments: Words and Phrases.** Every direction of the court made or entered in writing and not included in a judgment is an order.
8. **Judgments: Final Orders: Statutes: Appeal and Error.** While all judgments not incorrectly designated as such are appealable, an order may be appealed only if a statute expressly makes the order appealable or the order falls within the statutory definition of a final order.

9. **Arbitration and Award: Final Orders: Appeal and Error.** When Neb. Rev. Stat. § 25-2620 (Reissue 2016) is silent regarding the appealability of an arbitration-related order, an appellate court looks to the general final order statute to determine whether the order is final and appealable.

10. **Final Orders: Appeal and Error.** To be a final order subject to appellate review, the lower court's order must (1) affect a substantial right and determine the action and prevent a judgment, (2) affect a substantial right and be made during a special proceeding, (3) affect a substantial right and be made on summary application in an action after a judgment is rendered, or (4) deny a motion for summary judgment which was based on the assertion of sovereign immunity or the immunity of a government official.

11. **Final Orders.** Whether an order affects a substantial right depends on whether it affects with finality the rights of the parties in the subject matter.

12. **Arbitration and Award: Motions to Vacate.** When arbitration has already occurred and a party seeks to vacate, modify, or confirm an award, an extraordinary level of deference is given to the underlying award itself.

13. **Contracts: Rescission: Parties.** The purpose of rescission is to place the parties in a status quo, that is, return the parties to their position which existed before the rescinded contract; hence, rescission may be unavailable unless the parties can be placed substantially in the status quo.

14. **Arbitration and Award.** The Uniform Arbitration Act does not allow for the exercise of discretion by a court when a request for confirmation is made and there is no pending application for vacation, modification, or correction.

15. **Statutes: Words and Phrases.** As a general rule, the word "shall" in a statute is considered mandatory and is inconsistent with the idea of discretion.

16. **Trial: Evidence: Appeal and Error.** In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.

Appeal from the District Court for Buffalo County: John H. Marsh, Judge. Affirmed.

Michael J. Synek for appellant.

Patrick J. Nelson, of Law Office of Patrick J. Nelson, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

An arbitration award rejected Robert H. Cinatl's fraud-in-the-inducement claim seeking to rescind his contract to purchase an orthodontics practice. After the district court declined to vacate the arbitrator's award, the court confirmed it. Cinatl appeals. Because the refusal to vacate the award remained interlocutory until the award was confirmed, we consider but reject Cinatl's challenge to the first order. We conclude the court properly confirmed the award. Finding no merit to Cinatl's other arguments, we affirm the court's judgment.

## BACKGROUND

In 1989, Robert R. Prososki (Dr. Prososki) began an orthodontics practice in Kearney, Nebraska. He ceased practicing in July 2013, upon being diagnosed with cancer. Dr. Prososki hired an agent to broker a sale of the practice. The broker prepared an investor prospectus for the practice and provided a copy to Cinatl, an orthodontist. Relying on representations in the prospectus, Cinatl entered into a written contract in October with Dr. Prososki for the purchase of the practice and entered into a lease with Dr. Prososki and his wife for the office building.

On October 29, 2013, Cinatl began operating the practice. Shortly thereafter, he discovered what he considered to be misrepresentations in the investor prospectus. In December, Cinatl notified Dr. Prososki and his wife, via their attorney, that Cinatl wanted to set aside the contract. He received no response.

In August 2015, Dr. Prososki died. At the end of October, Cinatl ceased operating at the practice's location, though he rented space elsewhere for the next 14 months to "complete [his] patients."

## Pleadings

In 2016, Cinatl sued Karen R. Prososki (Prososki), both as the personal representative of the estate of Dr. Prososki and individually. He sought rescission of the "Contract of Purchase and Sale of Dental Practice" and lease. Cinatl alleged that fraudulent misrepresentations were made, that he relied upon them, and that he suffered damages as a result of the false representations. Prososki's answers (filed separately in her respective capacities) alleged that the complaint failed to state a claim upon which relief can be granted.

## Arbitration

Because the contract contained a paragraph specifying mandatory arbitration "pursuant to the applicable arbitration laws of Nebraska," Cinatl moved for appointment of an arbitrator. The district court found that the action was subject to arbitration and sustained a motion to compel arbitration.

The arbitrator conducted a hearing and received extensive evidence. Cinatl testified that by the first week of November 2013, he "knew there was something very wrong, but [he] couldn't put [his] finger on it." He later discovered that many files which had been represented to him as active files had "been finished." Cinatl called the broker in early November and stated that something was "very, very wrong." Cinatl testified a review of files conducted in December showed that the number of active patients would have been 345 but that the prospectus estimated 700 such patients. In December, Cinatl met with the attorney for Dr. Prososki and his wife to discuss perceived misrepresentations in the prospectus. Cinatl asked that Dr. Prososki and his wife "take the practice back, find somebody else."

In September 2015, Cinatl engaged a forensic accounting firm to review the practice's records. Justin Frauendorfer, one of the owners of the accounting firm, reviewed the investor prospectus to verify its accuracy for Cinatl.

Frauendorfer discovered that there were 311 active patient files on August 5, 2013, but that the prospectus represented

that there were approximately 700 active files. According to Frauendorfer, "[f]or this to be over 50 percent off is why in my professional opinion I would say that it was potentially intentional or reckless." Frauendorfer could not say that the number of active patients was intentionally misrepresented—partly because he had not spoken with the person who made the representation—but he could say it was reckless.

Frauendorfer discovered other discrepancies. The prospectus showed 200 patients in recall on August 5, 2013, but Frauendorfer found the number to be 228. The prospectus showed 1,400 total files, but Frauendorfer came up with "approximately, 600 plus files." He believed the statement that 1,400 total files existed showed a reckless disregard for the truth. The investor prospectus indicated that the number of new patients per month was 10, but Frauendorfer found that it was 2. Frauendorfer opined that "this practice summary sheet was materially misstated."

Frauendorfer testified that there were 72 active Medicaid patients on August 5, 2013, representing $73,225 in Medicaid patient liability. He found there were 239 private pay patients on August 5, of which 39 had paid for services in advance, amounting to $34,654.50. According to Frauendorfer, the amount of contracts receivable on August 5 was $322,948.24, which changed to $269,672.64 on the October 28 date of closing, a difference of $53,275.60. Based on Frauendorfer's experience, he would have expected that adjustment of the amount to be credited to Cinatl as the purchaser.

Cinatl testified that "[a]t a minimum," he was seeking to have the contract to purchase and the lease rescinded. He asked to be put back in the position that he occupied before entering the contract and lease and for Prososki to be restored back to the extent possible.

On August 3, 2018, the arbitrator found in favor of Prososki on the issues pertaining to the sale of the practice and the lease. The arbitrator determined that Prososki had no role in the marketing and sale of the practice and made none of the

representations about which Cinatl complained. The arbitrator found that at all times between October 28, 2013, and the end of October 2015, Cinatl operated the orthodontic practice and retained the benefits of all he had acquired under the contract.

The arbitrator concluded it was unnecessary to determine whether Prososki committed fraud in inducing Cinatl to enter into the contract. The arbitrator reasoned that Cinatl "did not rescind the contract but elected instead to receive the benefits of it for almost two years after he discovered the facts leading him to believe that he was defrauded." Paragraph 13 of the arbitrator's decision stated:

> During the time he operated the practice, Cinatl's ability to return Prososki to presale status quo diminished with each passing day. "The princip[al] relief effected by rescission is to place the parties in the same condition as they were in before the making of the contract sought to be rescinded." Kracl v. Loseke, 236 Neb. 291, 303, 461 N.W. 2d 67, 76 (1990). "[T]he remedy of rescission involves more than cancellation of a contract, and includes a judicial effort to place the contractual parties in, as nearly as possible, substantially the same condition which existed when the contract was entered. '[One] who seeks equity must do equity.'" Id.

The arbitrator noted that while Cinatl expressed dissatisfaction in late 2013 with what he considered to be misrepresentations by Dr. Prososki, he did not pursue rescission until January 2016—"over a year and ten months later"—when he filed a statement of claim in the estate of Dr. Prososki. By that time, the status quo at the time of closing of the contract could not be restored, particularly because Dr. Prososki had died and Cinatl had left patients without an orthodontist. The arbitrator determined that "[b]y continuing to operate his orthodontic practice at the office for over a year and ten months after the December 7, 2013, meeting, Cinatl ratified the contract and waived any cause of action he might have had arising from his purchase of the practice."

District Court Proceedings

Within 90 days of the arbitrator's decision, Cinatl filed an application to vacate the award. He alleged that "[t]he arbitrator exceeded his authority by rendering a decision based upon issues and defenses which the parties had not raised in the pleadings, including but not limited to: estoppel, laches, statute of limitations, and waiver."

On January 28, 2019, the court entered an order denying the application to vacate. The court noted that it did not have the bill of exceptions from the arbitrator's hearing or the written arguments submitted by the parties to the arbitrator. But in reviewing the arbitrator's decision, the court did not "find a substantial, if any, reliance by the arbitrator on the equitable defenses alleged." The court reasoned:

> Essentially, the arbitrator found that he did not need to address the issues of fraud or misrepresentation because it was impossible, given the passage of time, and circumstances to provide the remedy of rescission in that both parties could not be placed back in the status quo existing at the time the contracts were entered. This Court specifically refers to paragraph 13 of the arbitrator's decision.

Ten days later, Cinatl filed two motions. One motion, seeking a new trial, requested that the court "vacate the judgment and decision set forth in the Court's Order, filed January 28, 2019." Cinatl identified four grounds for a new trial under Neb. Rev. Stat. § 25-1142 (Reissue 2016). The other motion, which was later sustained, requested an order for preparation of the record from the arbitration hearing. The next day, Prososki filed a motion to confirm the arbitrator's award.

During a hearing on the motion for new trial, Cinatl's counsel argued that while the January 2019 order noted the absence of a bill of exceptions from the arbitrator's hearing, counsel did not believe a transcription was necessary, because he was making a legal argument. Counsel then had the record prepared, but he maintained that the court should not need

the record to rule on the arguments made during the application to vacate.

On August 12, 2019, the court entered an order overruling the motion for new trial. The court reasoned that the arbitrator's decision was "not necessarily grounded in laches or estoppel, but rather cite[d] an equitable principle that the parties cannot be placed in the same condition as they were before making the contract."

On August 16, 2019, Prososki filed an amended motion to confirm the arbitrator's award. On September 10, the court entered an order doing so. In confirming the award, the court took judicial notice that no motion to modify or correct the arbitration award was pending.

Thirty days later, Cinatl filed a notice of appeal. We moved this case to our docket.[1]

ASSIGNMENTS OF ERROR

Cinatl assigns, consolidated, restated, and reordered, that the district court erred by (1) failing to vacate the arbitrator's award and order a rehearing, (2) confirming the arbitrator's award, (3) depriving Cinatl of his right to procedural due process at the hearing by refusing to review the arbitration record, and (4) failing to rule upon the admissibility of an exhibit.

[1] Cinatl also assigns but fails to argue that the court erred by improperly suggesting with regard to Cinatl's application to vacate that the court needed to review a bill of exceptions from the arbitration hearing in order to consider the legal arguments presented by that application. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[2] Because his brief did not argue this assignment, we do not consider it.

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

[2] *TNT Cattle Co. v. Fife*, 304 Neb. 890, 937 N.W.2d 811 (2020).

## STANDARD OF REVIEW

[2] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[3]

[3] In reviewing a decision to vacate, modify, or confirm an arbitration award, an appellate court is obligated to reach a conclusion independent of the trial court's ruling as to questions of law. However, the trial court's factual findings will not be set aside on appeal unless clearly erroneous.[4]

## ANALYSIS

### Jurisdiction

[4-8] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[5] For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.[6] A judgment is the final determination of the rights of the parties in an action.[7] Every direction of the court made or entered in writing and not included in a judgment is an order.[8] While all judgments[9] not incorrectly designated as such[10] are appealable, an order may be appealed only if a statute expressly makes the order appealable or the order falls within the statutory definition of a final order.[11]

Cinatl's October 10, 2019, notice of appeal purported to appeal from three orders. He sought to appeal the January 28

---

[3] *Picard v. P & C Group 1*, 306 Neb. 292, 945 N.W.2d 183 (2020).

[4] *Garlock v. 3DS Properties*, 303 Neb. 521, 930 N.W.2d 503 (2019).

[5] *Cullinane v. Beverly Enters. - Neb.*, 300 Neb. 210, 912 N.W.2d 774 (2018).

[6] *State v. Fredrickson*, 306 Neb. 81, 943 N.W.2d 701 (2020).

[7] Neb. Rev. Stat. § 25-1301(1) (Cum. Supp. 2018).

[8] *State v. Fredrickson, supra* note 6.

[9] See § 25-1301(1) (defining judgment).

[10] See Neb. Rev. Stat. § 25-1315(1) (Reissue 2016).

[11] See *State v. Fredrickson, supra* note 6.

order denying his application to vacate the arbitrator's award, the August 12 order overruling his motion for new trial (in connection with the denial of the application to vacate), and the September 10 order confirming the arbitration award. Prososki challenges our jurisdiction of the first two of those orders.

To determine whether the orders are appealable, we first consider whether they are appealable orders under the Uniform Arbitration Act (UAA)[12] and, if not, whether they are final orders under Neb. Rev. Stat. § 25-1902 (Reissue 2016 & Supp. 2019).[13] Both parties base their arguments on the UAA, seemingly treating the contract as having agreed to arbitration based upon that law. We see no reason to do otherwise.

The UAA contains a statute addressing appeals. Under § 25-2620(a), an appeal may be taken from the following:

(1) An order denying an application to compel arbitration made under section 25-2603;

(2) An order granting an application to stay arbitration made under subsection (b) of section 25-2603;

(3) An order confirming or denying confirmation of an award;

(4) An order modifying or correcting an award;

(5) An order vacating an award without directing a rehearing; or

(6) A judgment or decree entered pursuant to the provisions of the [UAA].

Section 25-2620(a)(3) identifies an order confirming an award as an appealable order. Cinatl filed an appeal within 30 days of the September 2019 order confirming the arbitration award, and there is no dispute we have jurisdiction to consider that order.

[9] Whether the January 2019 order denying Cinatl's application to vacate is appealable is not as clear cut. While the

---

[12] Neb. Rev. Stat. §§ 25-2601 to 25-2622 (Reissue 2016 & Cum. Supp. 2018).

[13] See *Pearce v. Mutual of Omaha Ins. Co.*, 293 Neb. 277, 876 N.W.2d 899 (2016).

UAA explicitly allows an appeal from an order vacating an arbitration award,[14] it is silent as to whether a party may appeal an order *denying* an application to vacate. We have stated that when § 25-2620 is silent regarding the appealability of an arbitration-related order, we look to the general final order statute to determine whether the order is final and appealable.[15]

[10] Under our final order statute,[16] to be a final order subject to appellate review, the lower court's order must (1) affect a substantial right and determine the action and prevent a judgment, (2) affect a substantial right and be made during a special proceeding, (3) affect a substantial right and be made on summary application in an action after a judgment is rendered, or (4) deny a motion for summary judgment which was based on the assertion of sovereign immunity or the immunity of a government official.[17] Because this appeal clearly does not involve the last category, we first determine whether the order affected a substantial right of one or more parties.[18]

[11] The inquiry of whether a substantial right is affected focuses on whether the right at issue is substantial and whether the court's order has a substantial impact on that right.[19] Whether an order affects a substantial right depends on whether it affects with finality the rights of the parties in the subject matter.[20] It also depends on whether the right could otherwise effectively be vindicated.[21] An order affects a substantial right when the right would be significantly undermined or irrevocably lost by postponing appellate review.[22]

---

[14] § 25-2620(a)(5).

[15] See *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010).

[16] See § 25-1902.

[17] See *State v. Fredrickson, supra* note 6.

[18] See *id.*

[19] See *id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

Prososki contends that Cinatl needed to file an appeal from the order denying the application to vacate the arbitrator's award. According to Prososki, the right to challenge the validity of an award through an application to vacate is an essential legal right, because without a possible modification or correction, the only right to challenge an award is to apply for an order vacating the award. But this argument overlooks the unquestionable appealability of an order confirming the award[23] and the intent behind limiting the types of appealable arbitration orders. Appellate review of an arbitrator's award is necessarily limited, because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all—the quick resolution of disputes and the avoidance of the expense and delay associated with litigation. Strong deference is due an arbitrative tribunal; when parties agree to arbitration, they agree to accept whatever reasonable uncertainties might arise from the process.[24]

Other state courts have determined that no appeal can be taken from an order denying an application to vacate and that such an order may be reviewed upon an appeal from an order confirming the award.[25] The Hawaii Supreme Court instructed that upon the denial of a motion to vacate, the unsuccessful movant's recourse would then be a motion to confirm the award.[26] It explained that because the trial court has already reviewed the award and decided no grounds exist for vacating it, a confirmation should follow.[27] The movant could then

---

[23] See § 25-2620(a)(3).

[24] *Hartman v. City of Grand Island*, 265 Neb. 433, 657 N.W.2d 641 (2003).

[25] See, e.g., *Mid-Wilshire Associates v. O'Leary*, 7 Cal. App. 4th 1450, 9 Cal. Rptr. 2d 862 (1992); *Salud v. Financial Sec. Ins. Co., Ltd.*, 69 Haw. 427, 745 P.2d 290 (1987); *Nelson Paving Co., Inc. v. Hjelle*, 207 N.W.2d 225 (N.D. 1973). See, also, *Ayers v. R.A. Murphy Co.*, 163 Ohio App. 3d 497, 839 N.E.2d 80 (2005).

[26] See *Salud v. Financial Sec. Ins. Co., Ltd., supra* note 25.

[27] See *id.*

perfect an appeal and obtain appellate review of the order confirming the award.[28]

The purpose of confirming an arbitration award is to provide a judgment that can then be enforced through court proceedings.[29] "Upon the granting of an order confirming, modifying, or correcting an award, a judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree."[30] Ideally, confirmation should occur swiftly, although the court has 60 days from a party's application to do so.[31] Thus, though not immediately appealable, an unsuccessful movant for judicial vacatur should not have to wait long to obtain appellate review.

We conclude the January 2019 order denying the application to vacate the arbitrator's award did not affect a substantial right of Cinatl. For the same reasons, we conclude the August order overruling the motion for new trial (which asked the court to vacate the January 2019 order and which, because there was no trial in the district court, we treat as a motion to reconsider) did not affect a substantial right and was not a final order. The rights at issue in an interlocutory determination denying judicial vacatur of an arbitration award can be adequately vindicated through an appeal of the order confirming the award. Because these prior orders were interlocutory, Cinatl properly waited until entry of an appealable order—the order confirming the arbitration award—to challenge them.

### Failing to Vacate Award and Order Rehearing

[12] Having determined that we have jurisdiction over the order denying Cinatl's application to vacate, we consider

---

[28] *Id.*

[29] *Drummond v. State Farm Mut. Auto. Ins. Co.*, 280 Neb. 258, 785 N.W.2d 829 (2010), citing *Stewart Title Guar. Co. v. Tilden*, 64 P.3d 739 (Wyo. 2003).

[30] § 25-2615.

[31] See § 25-2612.

Cinatl's arguments that the district court erred by failing to vacate the award and order a rehearing. When arbitration has already occurred and a party seeks to vacate, modify, or confirm an award, an extraordinary level of deference is given to the underlying award itself.[32]

The UAA sets forth grounds for vacating an award. Section 25-2613 provides in relevant part:

(a) Upon application of a party, the court shall vacate an award when:

(1) The award was procured by corruption, fraud, or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of section 25-2606, as to prejudice substantially the rights of a party;

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under section 25-2603, and the party did not participate in the arbitration hearing without raising the objection; or

(6) An arbitrator was subject to disqualification pursuant to section 25-2604.01 and failed, upon receipt of timely demand, to disqualify himself or herself as required by such section.

The fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

Of these enumerated grounds, Cinatl asserted only that the arbitrator exceeded his or her powers. He argues on appeal that

---

[32] *Seldin v. Estate of Silverman*, 305 Neb. 185, 939 N.W.2d 768 (2020).

the arbitrator's decision should be vacated due to the absence of a finding on fraud, but that does not fit under his asserted ground for judicial vacatur.

Cinatl contends that the arbitrator exceeded his authority by rendering a decision based upon defenses not raised in the pleadings. Cinatl argues that because Prososki never asserted any affirmative defenses, the arbitrator should have rejected suggestions that Cinatl's cause of action may be time barred or barred by estoppel. Cinatl points to references in the arbitrator's conclusions of law concerning delay, estoppel, and waiver.

[13] The arbitrator's decision determined that rescission was unavailable due to the nature of the relief requested and the changed circumstances. The purpose of rescission is to place the parties in a status quo, that is, return the parties to their position which existed before the rescinded contract; hence, rescission may be unavailable unless the parties can be placed substantially in the status quo.[33] The arbitrator remarked on the inability to return the parties to the status quo. Its decision stated that "[d]uring the time he operated the practice, Cinatl's ability to return [Dr.] Prososki to pre-sale status quo diminished with each passing day." It further stated that Cinatl "took what was a going concern orthodontic practice and rendered it difficult if not impossible to return [Dr.] Prososki or his estate to status quo." The arbitrator observed that "[t]he practice closed, leaving patients without their orthodontist and having to find another—in effect, vanishing the practice" and that Dr. Prososki had passed away. The arbitrator determined that "Cinatl simply cannot restore the status quo at the time of closing of the contract." We find no merit to Cinatl's argument that the arbitrator decided the matter based on unpled defenses. Accordingly, even if we were to assume that the arbitrator would have exceeded his power by deciding the matter based on unpled defenses, the court did not err in overruling Cinatl's application to vacate and not ordering a rehearing.

---

[33] *Kracl v. Loseke*, 236 Neb. 290, 461 N.W.2d 67 (1990).

### Confirmation of Award

As mentioned, Cinatl appealed the court's confirmation of the award. He contends that the court approved the arbitrator's errors in failing to properly analyze or consider his fraud claim, failing to grant rescission, and failing to issue a just award.

[14,15] But under the circumstances, the district court had no option other than to confirm the award. The UAA does not allow for the exercise of discretion by the court when a request for confirmation is made and there is no pending application for vacation, modification, or correction.[34] Under § 25-2612, "the court *shall confirm* an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 25-2613 [vacating an award] and 25-2614 [modifying or correcting an award]." (Emphasis supplied.) Here, Cinatl sought to vacate the award, but the court denied his request. "If the application to vacate is denied and no motion to modify or correct the award is pending, the court *shall confirm* the award."[35] As a general rule, the word "shall" in a statute is considered mandatory and is inconsistent with the idea of discretion.[36] Under the circumstances, the court properly confirmed the award.

### Failing to Review Record From Arbitration Hearing

Cinatl argues that the court erred and violated his right to procedural due process by failing to review the record from the arbitration hearing, which he first offered during the hearing on Prososki's motion to confirm the arbitrator's award. But as discussed above, the court was obligated to confirm the award, because the court had already denied Cinatl's application to vacate and there was no pending motion to modify or correct

---

[34] See *Garlock v. 3DS Properties, supra* note 4.

[35] § 25-2613(d) (emphasis supplied).

[36] *Glasson v. Board of Equal. of City of Omaha*, 302 Neb. 869, 925 N.W.2d 672 (2019).

the award. We find no error or due process violation by the district court.

## Failing to Rule Upon Admissibility of Exhibit 101

Finally, Cinatl argues that the court erred by failing to rule upon the admissibility of an exhibit. During a hearing on the application to vacate, Cinatl offered exhibit 101, his affidavit, in which he swore that the statements in the application to vacate were true to the best of his knowledge. He represented during the hearing that his affidavit was "merely intended to be a verification of the allegations set forth in his application to vacate award." Cinatl attached two documents to the affidavit: (1) a copy of his application to vacate the arbitrator's award and (2) a copy of the arbitrator's decision. Prososki objected to the exhibit.

The court took the offer of exhibit 101 under advisement. The record contains no ruling on its admissibility. During a later hearing on the motion for new trial, Cinatl argued that the record was incomplete because it did not show whether the court received exhibit 101.

[16] We find no reversible error by the court in failing to rule on the admissibility of the exhibit. In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.[37] Before the court took the offer of the exhibit under advisement, it observed that the court file contained both the arbitrator's decision and the application to vacate. At one time, every pleading of fact in a civil action had to be verified by the affidavit of the party, his or her agent, or attorney.[38] But such verification has not been required for half a century.[39] Because

---

[37] *In re Interest of Vladimir G.*, 306 Neb. 127, 944 N.W.2d 309 (2020).

[38] See, Neb. Rev. Stat. § 25-824 (1943); *AVG Partners I v. Genesis Health Clubs, ante* p. 47, 948 N.W.2d 212 (2020).

[39] See *AVG Partners I v. Genesis Health Clubs, supra* note 38, citing 1969 Neb. Laws, L.B. 375.

the court's record contained the documents attached to Cinatl's affidavit and his verification of the statements in his application to vacate was unnecessary, he suffered no prejudice by the court's failure to rule on the exhibit's admissibility.

## CONCLUSION

We have jurisdiction to consider Cinatl's challenge to the denial of his application to vacate, but his challenge lacks merit. Because the district court did not err in confirming the arbitration award, we affirm its judgment.

AFFIRMED.