Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/02/2021 09:07 AM CST

Signal 88, LLC, appellant, v.
Lyconic, L.L.C., appellee.

___ N.W.2d ___

Filed February 23, 2021.    No. A-19-1069.

1. **Arbitration and Award: Appeal and Error.** In reviewing a decision
   to vacate, modify, or confirm an arbitration award, an appellate court is
   obligated to reach a conclusion independent of the trial court's ruling as
   to questions of law. However, the trial court's factual findings will not
   be set aside on appeal unless clearly erroneous.
2. **Arbitration and Award.** The Uniform Arbitration Act does not allow
   for the exercise of discretion by the court when a request for confirma-
   tion is made and there is no pending application for vacation, modifica-
   tion, or correction.
3. **Statutes: Words and Phrases.** As a general rule, the word "shall"
   in a statute is considered mandatory and is inconsistent with the idea
   of discretion.
4. **Arbitration and Award.** An ambiguous award should be remanded to
   the arbitrators so that the court will know exactly what it is being asked
   to enforce.

Appeal from the District Court for Douglas County: Marlon
A. Polk, Judge. Reversed and vacated, and cause remanded for
further proceedings.

Michael T. Eversden and Brian McKernan, of McGrath,
North, Mullin & Kratz, P.C., L.L.O., for appellant.

Michael S. Degan, of Dvorak Law Group, L.L.C., for
appellee.

Bishop, Arterburn, and Welch, Judges.

WELCH, Judge.

## INTRODUCTION

Signal 88, LLC, appeals the order of the Douglas County District Court confirming an arbitration agreement relating to a dispute over the proper termination of a contract concerning software licensing between Signal 88 and Lyconic, L.L.C. Signal 88 contends that the district court erred by modifying the arbitrator's award rather than simply confirming it. For the reasons set forth here, we reverse and vacate, and remand for further proceedings.

## STATEMENT OF FACTS

On June 6, 2011, Signal 88 contracted with Lyconic to provide certain software services to Signal 88 to assist in the operation of its security-related service business. Pursuant to §§ 1.9 and 9.1 of the parties' contract, the initial term of the contract was 3 years, and under § 9.2, Signal 88 was entitled to renew the contract for up to three additional 2-year renewal terms. Pursuant to § 6.1 of the contract, Lyconic was to be paid $25,000 per month for the first year of the initial term, while the payment obligation rose to $30,000 per month for the second and third years of the initial term. The contract contained corresponding rate increases during the renewal terms if those renewal terms were exercised.

Section 9.2 of the contract provided that if Signal 88 desired to exercise its right to renew the contract past the initial term, it must provide notice to Lyconic at least 60 days prior to the expiration of the initial term. Section 9.4(d) provided the following in the event of termination of the contract:

> **Termination Assistance.** Lyconic shall cooperate fully with [Signal 88] so as to achieve a smooth transition of all records and data and services without disruption to the Business. At the written request of [Signal 88], Lyconic will provide [Signal 88] (for the benefit of [Signal 88] and the Franchisees) with reasonable assistance for up to one hundred eighty (180) days relating to the transition to another vendor or to [Signal 88]; provided that all

such assistance shall be billed to [Signal 88] at Lyconic's then current hourly rate.

The parties subsequently amended the agreement prior to the expiration of the initial term. As relevant to this appeal, on February 14, 2014, the parties agreed to the following language in "Addendum #1": "Lyconic to agree to decrease the Service Fee (Section 6 - Fees and Payments, 6.1) from $30,000 per month to $25,000 retroactive to February 1, 2014." Addendum #1 further provided:

The parties agree to execute a new Addendum before the Initial Term expires on June 6, 2014[,] addressing the following:

• Renewal (Section 9 — Term, Default, and Termination, 9.2) to be redefined as month-to-month, at the renewal rate of $25,000 per month, with a required 30 days advanced notice of [Signal 88's] intent to terminate contract.

• Termination Assistance (Section 9 — Term, Default, and Termination, 9.4 d) shortened to 30 days after contract termination. [Signal 88] can optionally extend Termination Assistance in exchange for a proportionate amount of additional advanced termination notice[,] i.e. [i]f 60 days Termination Assistance, then 60 days advanced notice of termination.

Nearly 2 years after the parties executed the addendums and while the contract continued past the initial term on a month-to-month basis, on February 5, 2016, Signal 88 notified Lyconic of its intention to change software vendors and terminate the contract sometime during the spring or summer of that year. On February 29, Lyconic responded with its own written notice of nonrenewal, stating it would not renew the agreement beyond the current monthly term, that the Agreement would expire on March 6, and that Lyconic would provide termination assistance until April 6.

Signal 88 responded to Lyconic's termination notice on March 1, 2016. It disputed the validity of Lyconic's "purported

termination notice" and stated that "[a]lthough Signal 88 has previously given Lyconic notice of termination, this letter shall also serve as written notice to Lyconic that, pursuant to Section 18 of the Agreement, Signal 88 intends to terminate the Agreement effective as of midnight on July 1, 2016 (the 'Termination Date')." The letter also addressed the concept of termination assistance in connection with the notice of termination. Specifically, Signal 88 provided:

Certain provisions and obligations under the Agreement continue after the Termination Date, including but not limited to Lyconic's obligation to provide Termination Assistance, as defined in the Agreement. By this letter, Signal 88 requests such Termination Assistance, which, as provided in Addendum #2, should extend for 122 days after the Termination Date.

On March 3, 2016, due to the competing positions governing termination of the contract, Signal 88 commenced this lawsuit (the lawsuit) in the Douglas County District Court, seeking a "Declaratory Judgment and Injunction" relating to this dispute and specifically praying as follows:

WHEREFORE, [Signal 88] prays that the Court enter a judgment:

1. Determining the rights and obligations of the parties with respect to the termination of the Agreement, specifically determining that [Lyconic] has no right to terminate the Agreement as of March 6, 2016[,] and that the Agreement will terminate on July 1, 2016;

2. Determining the rights and obligations of the parties under the Agreement with respect to the termination services, specifically determining that [Lyconic] has no right to cease providing termination services after April 6, 2016[,] and that such services must continue for at least 122 days after July 1, 2016, if [Signal 88] should require such services;

3. Preliminarily and permanently enjoining [Lyconic] from terminating the Agreement before July 1, 2016;

4. Preliminarily and permanently enjoining [Lyconic] from terminating or otherwise altering the Software or Services [Lyconic] is obligated to provide to [Signal 88] under the Agreement before July 1, 2016[,] and the termination services [Lyconic] is obligated to provide for 122 days thereafter;

5. Awarding [Signal 88] damages in an amount to be determined at trial; and

6. Awarding [Signal 88] such other and further relief as is just and proper.

On March 11, 2016, after the lawsuit was filed, the district court entered an order which stated that pursuant to § 23 of the contract, the parties were given 30 days to arbitrate "this dispute," and that "the status quo shall be preserved with respect to the parties' business relationship and their respective rights and obligations" until further order of the court.

On April 13, 2016, the parties submitted the dispute contained within the lawsuit to an arbitrator. In a written opinion issued by the arbitrator on April 25, 2016, as relevant to this appeal, the arbitrator framed the issues for the arbitrator's consideration as follows:

In discussions with counsel for the parties prior to the submission of arguments and evidence, the arbitrator requested the parties to list those issues the parties believe should be resolved by arbitration. Lyconic listed the issues as follows:

(1) Whether Lyconic's Notice of Nonrenewal was effective notice of Lyconic's intent to not renew sufficient to end further renewal and terminate the Agreement.

(2) Whether Signal 88's Notice of Termination is a Nullity.

(3) The duration and extent of Termination Assistance that Lyconic must provide Signal 88.

(4) The extent of Lyconic's post-termination exclusivity/non-solicitation/non-compete obligations.

(5) Whether Masterguide is subject to Arbitration, and if so, whether Lyconic has any obligation to continue allowing Signal 88 to access Masterguide.

Signal 88 listed two issues for determination:

(1) Which party's notice of termination/nonrenewal was valid and determine the date of termination and the date Lyconic must continue to provide Termination Services; and

(2) Whether the services provided through what has been called Masterguide are included in the monthly charge under the parties' agreement, as amended, or are to be billed separately as Lyconic now contends.

After reviewing the record provided to the arbitrator, as it relates to matters relevant to this appeal, the arbitrator found:

It is the decision of the arbitrator that Lyconic's letter of February 29[, 2016,] did not terminate the Agreement, as modified by the Addendums, effective March 6, 2016. Rather, the notice of termination by Signal 88 on March 1, 2016[,] effectively terminated the contract as of July 1, 2016. In providing this notice Signal 88 provided 122 days advance notice and therefore can request an equal amount of days of termination assistance. Accordingly, Lyconic's obligation to provide termination assistance extends 122 days from the termination date, expiring November 11, 2016. Signal 88 is obligated to pay for Lyconic's services at the renewal rate of $25,000 per month.

Following the arbitrator's decision, Lyconic filed an application with the district court to confirm the arbitration award. While that application was pending, Lyconic filed an answer to the original lawsuit acknowledging that "the arbitrator issued a final decision and award resolving the issues framed by the Complaint, which is binding upon the parties," but included a new counterclaim which it alleged was not resolved by the arbitrator or subject to the arbitration agreement. Lyconic later amended that counterclaim to add additional allegations that—following the arbitrator's decision, but

prior to termination—Signal 88 "[u]nlawfully [h]ack[ed]" into Lyconic's computers, began downloading information from its servers, and wrongfully disclosed confidential information it obtained.

Prior to trial in this matter, both parties moved for partial summary judgment. Lyconic's motion for partial summary judgment alleged that Signal 88's direct claim in the lawsuit was resolved by arbitration; that the district court's prior email suggesting it would grant the prior application for confirmation was, in fact, a confirmation of the arbitrator's award; and that pursuant to the terms of the arbitrator's award, Lyconic was entitled to both pretermination services in the amount of $25,000 per month and posttermination assistance service fees for 122 days of posttermination assistance at the rate of $25,000 per month. Signal 88's motion for partial summary judgment argued it was entitled to summary judgment on Lyconic's counterclaim.

Following a hearing on the parties' partial summary judgment motions, the district court orally stated it would grant only Lyconic's partial summary judgment motion governing Signal 88's direct claim in the lawsuit, but would move forward with a bench trial governing Lyconic's counterclaim. Following that trial, the district court entered judgment in favor of Lyconic on its counterclaim within the lawsuit (which has not been appealed), but entered separate orders governing Signal 88's direct claims within the lawsuit. In these separate orders, the district court acknowledged that, although it orally pronounced from the bench it would grant Lyconic's motion for partial summary judgment, based upon its second order, the ruling was moot. And in that second order, the subject of this appeal, the district stated, in relevant part:

> On or about May 31, 2016, the Court sent counsel for the parties an email informing counsel that the Court was granting . . . Lyconic's Application for Confirmation of Arbitration Award & Entry of Judgment. However, an Order Confirming the Arbitration Award & Entry of Judgment was never entered into the court records.

Section 25-2612 of the Uniform Arbitration Act provides that, "Within sixty days of the application of a party, the court shall confirm an award, unless with the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, which case the court shall proceed as provided [in] sections 25-2613 and 25-2614." Neb. Rev. Stat. § 25-2612 (Reissue 2016); Drummond v. State Farm Mut. Auto. Ins. Co., 280 Neb. 258, 260 (Neb. 2010) ("Therefore, when a party applies for confirmation of an award under § 25-2612, a district court shall confirm the award unless a party has moved for vacation, modification, or correction of the award.") With regard to vacating an award[,] the Nebraska Supreme Court stated in Hartman v. City of Grand Island, 265 Neb. 433, 437 (Neb[.] 2003): "Moreover, §25-2613 does not include any authorization for a court to vacate an arbitration award on grounds that it is excessive or inequitable. Section 25-2613(a)(6) specifically provides, 'The fact that the relief was such that it could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award.[']" Id. at 437.

In the instant case, . . . Lyconic moved for confirmation of the arbitrator's award within the applicable time frame and given that the record does not show that a party moved for vacation, modification or correction of the arbitrator's award, this Court must confirm the award.

THEREFORE, the Court will grant . . . Lyconic's Application for Confirmation of [the] Arbitration Award and will confirm the Arbitration Decision of April 25, 2016[,] wherein the Arbitrator found that Signal 88 is obligated to pay Lyconic for 122 days of Termination Assistance at the renewal rate of $25,000 per month.

## ENTRY OF JUDGMENT

Judgement is hereby entered in favor of [Lyconic] and against [Signal 88], in the amount of $109,166.67

with interest accruing at the rate of 1.5% per month as of November 26, 2016.

Signal 88 filed a motion for new trial or to alter or amend the September 6, 2019, order, which motion was denied. Signal 88 now appeals the district court's rulings in the September 6 order and the overruling of its motion for new trial or to alter or amend.

## ASSIGNMENTS OF ERROR

Although Signal 88 assigns eight different assignments of error, they can generally be restated as claiming that the district court erred by modifying the arbitrator's award, rather than simply confirming it.

## STANDARD OF REVIEW

[1] In reviewing a decision to vacate, modify, or confirm an arbitration award, an appellate court is obligated to reach a conclusion independent of the trial court's ruling as to questions of law. However, the trial court's factual findings will not be set aside on appeal unless clearly erroneous. *Cinatl v. Prososki*, 307 Neb. 477, 949 N.W.2d 505 (2020).

## ANALYSIS

Neither party in this lawsuit disputes the fact that Signal 88's direct claim was properly referred by the district court to arbitration; that the arbitrator rendered a decision governing the matter referred; that pursuant to Lyconic's application for confirmation of arbitration award, the district court was required to enter a judgment which confirmed the arbitrator's award; or that the district court did enter a judgment. Signal 88 simply argues that the district court's judgment misstates the arbitrator's award and requests this court to remand for entry of a judgment that is consistent with the arbitrator's award.

This dispute arises from the final two sentences in the arbitrator's decision. After finding that Signal 88 provided the proper notice of termination of the contract; that the termination date was July 1, 2016; and that, by providing notice

of termination on March 1, 2016, Signal 88 "provided 122 days advance notice and therefore can request an equal amount of days of termination assistance," the arbitrator concluded: "Accordingly, Lyconic's obligation to provide termination assistance extends 122 days from the termination day, expiring November 11, 2016. Signal 88 is obligated to pay for Lyconic's services at the renewal rate of $25,000 per month."

The dispute then centers upon the concept of termination assistance to be "provided" by Lyconic following the termination date. Based upon Lyconic's interpretation of the arbitrator's decision, Lyconic urged the court to enter judgment against Signal 88 for 122 days of posttermination assistance services at the rate of $25,000 per month, which Lyconic calculated to be $109,166.67, with interest accruing.

Signal 88 argues that based upon its interpretation of the arbitrator's decision, the $25,000 referred to by the arbitrator governs the pretermination rate and not the posttermination assistance service rate, and that the arbitrator neither determined that Signal 88 was obligated to utilize the full 122 days of posttermination services, nor determined the rate to be charged for such posttermination services. In sum, Signal 88 argues that the arbitrator determined Signal 88's termination notice entitled it to request up to 122 hours of posttermination services and that if it did request those services, Lyconic was contractually obligated to provide those termination services at Lyconic's then-current hourly rate. In its September 6, 2019, judgment, it is clear that the district court adopted Lyconic's interpretation of the arbitrator's decision as it found that Signal 88 was obligated to pay Lyconic for 122 days of termination assistance at the renewal rate of $25,000 per month and entered judgment against Signal 88 in the amount of $109,166.67 with interest accruing. It is also clear that the language in the district court's order does not directly track with the language used by the arbitrator.

[2,3] The applicable law as it relates to this dispute was recently discussed by the Nebraska Supreme Court in *Cinatl*

*v. Prososki*, 307 Neb. 477, 949 N.W.2d 505 (2020). In *Cinatl*, the appellant appealed the court's confirmation of the arbitration award, arguing the arbitrator failed to consider its fraud claim, failed to grant rescission, and failed to issue a just award. But in response to these assignments, the court held:

> But under the circumstances, the district court had no option other than to confirm the award. The [Uniform Arbitration Act] does not allow for the exercise of discretion by the court when a request for confirmation is made and there is no pending application for vacation, modification, or correction. Under § 25-2612, "the court *shall confirm* an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 25-2613 [vacating an award] and 25-2614 [modifying or correcting an award]." (Emphasis supplied.) Here, Cinatl sought to vacate the award, but the court denied his request. "If the application to vacate is denied and no motion to modify or correct the award is pending, the court *shall confirm* the award." As a general rule, the word "shall" in a statute is considered mandatory and is inconsistent with the idea of discretion. Under the circumstances, the court properly confirmed the award.

*Cinatl v. Prososki*, 307 Neb. at 492, 949 N.W.2d at 517-18.

Here, like in *Cinatl*, neither party moved to vacate, modify, or correct the arbitrator's award following the filing of Lyconic's application to confirm it. Under these circumstances, the district court was simply required to confirm it.

But unlike the circumstances in *Cinatl*, here neither party is arguing that the award should be vacated, modified, or corrected as those terms are then defined within the aforementioned statues. The parties simply assert different interpretations and meanings to the words used by the arbitrator in its award.

In order to encourage this court to adopt its interpretation, Signal 88 makes a series of arguments. For instance, Signal 88 argues that Lyconic's interpretation would result in a decision by the arbitrator that exceeds the scope of its direct claim in the lawsuit; exceeds the issues framed by the arbitrator; contravenes certain language in the contract (termination fees are only to be charged at Lyconic's hourly rate and not the renewal rate); results in inconsistencies in the language of the arbitration decision if Lyconic's interpretation is adopted; and would improperly render the contract an option contract, et cetera.

Lyconic likewise encourages this court to adopt its meaning of the arbitrator's award, the one adopted by the district court, while similarly pointing to language in the contract and in the arbitrator's decision that supports this interpretation, and by arguing that the plain language of the arbitrator's decision supports the award.

Unlike cases in which this court is called upon to review circumstances attendant with motions to vacate, modify, or correct an award, this case presents a different scenario. Although it was unquestionably the obligation of the district court to confirm the arbitrator's award, the question becomes this: What is the court's role when there is a disagreement as to the meaning of the actual language within the arbitrator's award which must be reduced to a judgment? Stated differently, what should the court do when the issue does not involve vacation, modification, or correction, but simply requires clarification? Under these circumstances, should the court attempt to ascertain the arbitrator's likely meaning of its chosen words when performing its ministerial task of entering its judgment?

Although we could find no prior Nebraska case directly on point governing this specific issue, we note the Eighth Circuit Court of Appeals' decision governing a similar issue in *Domino Group v. Charlie Parker Mem. Foundation*, 985 F.2d 417 (8th Cir. 1993).

[4] In *Domino Group*, the Eighth Circuit, after first noting that the failure of either party to timely file a motion to vacate, modify, or correct reduced the confirmation process to a summary proceeding to make the final award a judgment of the court, separately held:

> Second, when Domino filed its timely motion to confirm the arbitrator's initial award of specific performance, the district court properly remanded the case to the arbitrator for clarification of that award. "An ambiguous award should be remanded to the arbitrators so that the court will know exactly what it is being asked to enforce." *Americas Ins. Co. v. Seagull Compania Naviera,* 774 F.2d 64, 67 (2d Cir.1985). Domino sought to convert the arbitrator's award of specific performance into a court judgment, that is, an equitable decree in the nature of mandatory injunctive relief. Rule 65(d) of the Federal Rules of Civil Procedure provides that, "Every order granting an injunction . . . shall be specific in terms [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." We agree with the district court that a judgment simply confirming the arbitrator's initial ambiguous award would have been inconsistent with the court's duty to fashion a specific equitable decree that fairly apprised the Foundation of its obligations.

985 F.2d at 420.

Although not argued by either party in its brief, we separately note the language in Neb. Rev. Stat. § 25-2610 (Reissue 2016). That section provides:

> On application of a party or, if an application to the court is pending under section 25-2612, 25-2613, or 25-2614, on submission to the arbitrators by the court under such conditions as the court may order, the arbitrators may modify or correct the award upon the grounds stated in subdivisions (a)(1) and (a)(3) of section 25-2614 or for the purpose of clarifying the award. The

application shall be made within twenty days after delivery of the award to the applicant. Written notice thereof shall be given forthwith to the opposing party, stating he or she must serve his or her objections thereto, if any, within ten days from the notice. The award so modified or corrected is subject to the provisions of sections 25-2612 to 25-2614.

Although § 25-2610 allows either party to apply to the arbitrators to modify or correct the award, under limited circumstances, or to clarify the award, it also allows the court to do so while the application to confirm the award is pending. And although the parties are limited to making this request to the arbitrators within 20 days after delivery of the award to the applicant, the court is not likewise constrained. Stated differently, § 25-2610 provides the court with the authority to submit to the arbitrators a request for clarification without the same time limitation imposed upon the parties. And when the court's role is limited to a summary proceeding, that is, to enter a judgment in accordance with the award, the court should exercise its authority under § 25-2610 when it determines that the language of the award is ambiguous and requires clarification.

As the Eighth Circuit noted in *Domino Group v. Charlie Parker Mem. Foundation, supra*, once the application was not met with a motion to vacate, modify, or correct, it was reduced to a summary proceeding to enter a judgment in accordance with the award. However, by deviating from the exact language used by the arbitrator, the district court engaged in a judicial role rather than performing a ministerial act. Although some form of deviation may be appropriate when the language of the arbitrator is clear, it is not allowed when the language of the arbitrator is ambiguous and requires clarification of the arbitrator's meaning.

Although this court could engage in an exercise where it attempts to construe the likely meaning of the arbitrator's last two sentences of the award governing posttermination

services, we acknowledge there is ambiguity in the arbitrator's language here and hold that, under such circumstances, it was incumbent upon the district court to remand the matter to the arbitrator to clarify his meaning.

Accordingly, we reverse and vacate the district court's September 6, 2019, order. We further remand the matter to the district court to remand the matter to the arbitrator to amend his April 25, 2016, decision to clarify the meaning of the first two sentences as set forth earlier. More specifically, the district court is ordered to remand for clarification from the arbitrator whether the arbitrator intended to provide that Signal 88 is obligated to utilize all 122 days of posttermination services from Lyconic and, if so, whether the arbitrator was communicating the rate to be paid for those posttermination services.

## CONCLUSION

In sum, for the reasons set forth herein, we reverse and vacate the district court's September 6, 2019, order described above and remand the matter to the district court with directions for the district court to remand the matter to the arbitrator to amend its April 25, 2016, decision to clarify the meaning of the sentences as discussed above.

Reversed and vacated, and cause remanded for further proceedings.