Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/25/2020 12:11 AM CST

Connie S. Yori, appellee, v.
Kirk P. Helms, appellant.
___ N.W.2d ___

Filed October 2, 2020.    Nos. S-19-520, S-19-840.

1. **Contempt: Appeal and Error.** In a civil contempt proceeding where
a party seeks remedial relief for an alleged violation of a court order,
an appellate court employs a three-part standard of review in which (1)
the trial court's resolution of issues of law is reviewed de novo, (2) the
trial court's factual findings are reviewed for clear error, and (3) the trial
court's determinations of whether a party is in contempt and of the sanc-
tion to be imposed are reviewed for abuse of discretion.
2. **Parental Rights: Appeal and Error.** Whether relief entered in a pro-
ceeding to enforce a parent's rights is reasonably necessary to enforce
such rights is reviewed for an abuse of discretion.
3. **Jurisdiction: Appeal and Error.** A jurisdictional question which does
not involve a factual dispute is determined by an appellate court as a
matter of law.
4. **Contempt.** Contempt proceedings may both compel obedience to orders
and administer the remedies to which the court has found the parties to
be entitled.
5. ____. In a civil contempt proceeding, for the sanction to retain its civil
character, the contemnor must, at the time the sanction is imposed, have
the ability to purge the contempt by compliance and either avert punish-
ment or, at any time, bring it to an end.
6. **Courts: Jurisdiction: Divorce: Contempt.** A court's continuing juris-
diction over a dissolution decree includes the power to provide equitable
relief in a contempt proceeding.
7. **Courts: Equity.** Where a situation exists that is contrary to the prin-
ciples of equity and which can be redressed within the scope of judicial
action, a court of equity will devise a remedy to meet the situation.
8. **Evidence: Appeal and Error.** Where credible evidence is in conflict
on a material issue of fact, the appellate court considers, and may give

weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

9. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

10. ____: ____. Generally, once an appeal has been perfected, the trial court no longer has jurisdiction.

11. ____: ____. A trial court's jurisdiction under Neb. Rev. Stat. § 42-351(2) (Reissue 2016) during the pendency of an appeal is properly characterized as jurisdiction in aid of the appeal process.

12. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.

13. **Judgments: Final Orders: Appeal and Error.** While all judgments not incorrectly designated as such are appealable, an order may be appealed only if a statute expressly makes the order appealable or the order falls within the statutory definition of a final order.

14. **Final Orders: Appeal and Error.** To be a final order subject to appellate review, the lower court's order must (1) affect a substantial right and determine the action and prevent a judgment, (2) affect a substantial right and be made during a special proceeding, (3) affect a substantial right and be made on summary application in an action after a judgment is rendered, or (4) deny a motion for summary judgment which was based on the assertion of sovereign immunity or the immunity of a government official.

15. **Final Orders.** The inquiry of whether a substantial right is affected focuses on whether the right at issue is substantial and whether the court's order has a substantial impact on that right.

16. ____. Whether an order affects a substantial right depends on whether it affects with finality the rights of the parties in the subject matter.

17. **Final Orders: Time.** The duration of an order is relevant to whether it affects a substantial right.

Appeals from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Judgment in No. S-19-520 affirmed. Appeal in No. S-19-840 dismissed.

Gregory D. Barton, of Barton Law, P.C., L.L.O., for appellant.

Amie C. Martinez and Megan M. Zobel, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

The district court found Kirk P. Helms in contempt of court for violating parenting provisions of a dissolution decree, imposed a suspended jail sentence, and modified terms of the parenting plan. Helms appealed, arguing that the modifications were punitive and not reasonably necessary (first appeal). While that appeal was pending, the district court entered an order of commitment and a purge order which contained a reduction in Helms' parenting time but set the matter for a review hearing in 4½ months. Helms appealed that order (second appeal). Because the modifications involved in the first appeal were part of the equitable relief that the court was authorized to provide, we find no abuse of discretion and affirm. We dismiss the second appeal for lack of a final order.

## BACKGROUND

### Marriage and Dissolution

Helms married Connie S. Yori in 1996, and a child was born to the marriage in July 2004. The parties subsequently sought to dissolve their marriage and entered into a mediated agreement.

On March 1, 2017, the district court entered a decree of dissolution. The decree awarded the parties joint legal and physical custody of the child. The parenting plan attached to the decree contained the terms of the parties' mediated agreement and addressed topics such as day-to-day decisionmaking, alcohol consumption and testing, and parental responsibility and cooperation.

### Contempt Proceedings

Yori claimed that Helms violated provisions of the parenting plan and mediated agreement. She filed an application for an order to show cause in October 2017 and thereafter filed

several amended applications. The operative pleading, filed in September 2018, alleged over 60 violations by Helms of the mediated agreement and decree of dissolution. In particular, Yori alleged that Helms violated the provisions regarding payment of expenses for the child, medical appointments for the child, cooperation between the parents, and Helms' consumption of alcohol and compliance with alcohol testing.

Trial began in October 2018 but needed to be continued to December. In November, Helms moved to continue the hearing. The court sustained the motion, subject to provisions contained in a temporary order. Trial resumed in March 2019.

The December 2018 temporary order addressed transportation of the child and also gave Yori "final say on matters relating to the minor child's sports and athletics." It ordered that during the pendency of the proceedings, Yori or her designated representative be allowed to provide the child's transportation to and from all religious confirmation or youth group activities, educational meetings or events relating to an educational action plan, athletic practices, and athletic tournaments or games.

During a February 2019 hearing, the court clarified its intent with respect to the December 2018 temporary order. The court explained that its intent was for Yori to transport the child to the various activities, even if the activities occurred during Helms' parenting time. The court stated that Yori "either is to return the child or, if . . . Helms is present at that activity, I don't think there was any objection to him taking the child home from that activity, at least, from an email here it says you can take him home afterwards." The court repeated, "The purpose and intent of this is to make sure the child makes it to all the activities . . . ."

During the hearings on Yori's application for an order to show cause, a number of witnesses testified on Yori's behalf. Tim McGovern, who coached the child's basketball team with Yori, testified that during a meeting with the players' parents, Helms said that Yori was bullying the children and should not be trusted to be in charge of their sons. It appeared to

McGovern that "trying to make [Yori] look bad was the goal." McGovern testified that he observed Helms at the child's basketball tournaments and had concerns that Helms was under the influence of alcohol.

Other witnesses echoed McGovern's testimony. Jennifer Cramer, who attended the meeting mentioned by McGovern, testified that Helms told the parents that Yori was abusive to the players and to him during their marriage. Cramer complained to Helms at that meeting about his failure to bring the child to practices or games. At a May 2018 basketball tournament, Cramer observed Helms exhibiting abnormal behavior, including "flip[ping her] off" in the presence of parents and children. Another parent testified about her concerns that Helms was under the influence of alcohol at the child's basketball tournaments. She testified that she smelled alcohol on him and that she observed him "walk across the court, flipping off . . . towards our area." Helms denied standing in the middle of a basketball court and flipping off the crowd. He also denied attending any of the child's basketball games or events while under the influence of alcohol. But in February 2019, Helms was arrested for driving under the influence on his way home from attending the child's basketball event. At the time of the hearing, Helms did not have a driver's license and relied on transportation by bicycle or bus or as provided by his family.

Yori testified about difficulties in obtaining reimbursement from Helms for the child's medical expenses. She sent numerous emails to Helms, requesting reimbursement and including itemizations of expenses and copies of each billing statement. Helms did not reimburse Yori because she did not send him the insurer's explanation of benefits and instead sent handwritten information and amounts. He also asked Yori to sign a release so that he could talk with the healthcare provider, but she did not do so.

The parties testified regarding issues with alcohol monitoring through Soberlink. The decree required Helms to keep Soberlink in place and to test during his parenting time at

8 a.m., 2 p.m., and 10 p.m. Six weeks after entry of the decree, Helms submitted a change request form to Soberlink, directing that Yori not be listed as a concerned party. Although a Soberlink form showed a change in the concerned party name to Helms' sister, Helms testified that he just intended to add his sister as a contact. The same page of the form identified Yori as someone who is to receive test results. Helms testified that Yori never informed him that she was not timely receiving Soberlink reports and that he did not recall her complaining about not being listed as a concerned party.

Helms also reduced the Soberlink monitoring from "Level 2" to "Level 1" monitoring. With Level 1 monitoring, in contrast with Level 2 monitoring, Yori does not receive missed tests alerts and Helms does not have scheduled testing. Helms testified that he switched from Level 2 to Level 1 because it was his understanding that dates and times for testing could not be changed on Level 2. He felt that Level 1 would work better under the parenting agreement, because dates when the child would be with him would not stay the same all year long.

Yori testified that through the summers of 2017 and 2018, Helms routinely missed Soberlink testing at 2 p.m. on Fridays. According to Helms, he tested at all required times when the child was with him. But if his parenting time ended at 3 p.m., he would not take the 2 p.m. test unless he had to pick the child up for some reason. He admitted there was no language in the decree excusing him from taking a test at 2 p.m. on Fridays.

The decree gave Yori "final say" regarding educational and religious issues. Yori informed Helms that she wanted the child to participate in religious confirmation preparation, but she testified that Helms expressed unwillingness to allow the child to participate. Yori testified that because the child was struggling in school, his counselor and teacher devised a plan to help him which included arriving at school 30 minutes early. But of the 11 sessions during Helms' parenting time, the child attended only 3. Yori testified that in April 2018, during Helms' parenting time, the child was suspended from school

and Helms did not inform her of a meeting with the principal and vice principal. Helms did not respond to Yori's request inquiring of the consequences for the child.

Yori had concerns about the child's attendance at athletic events. She testified that in the summer of 2017, Helms took the child to only 3 of 18 practices. She felt that Helms acted in a retaliatory fashion when he removed the child from an athletic team. Even after the court entered the temporary order allowing Yori to transport the child to and from events, Helms attempted to transport the child.

## Order of Contempt

On May 1, 2019, the court entered an order of contempt. The court found that Helms willfully, intentionally, and contumaciously violated multiple provisions of the decree, including the obligation to not consume alcohol, to continue with Soberlink as ordered, and to comply with the parenting responsibilities and cooperation language. It also found that it had the authority to modify the decree as it related to the child in order to remedy the contempt. The court committed Helms to jail for 21 days, but suspended execution of the sentence as long as Helms complied with several terms of the order. Among others, the terms included:

• refraining from consuming alcohol through December 31, 2022;
• refraining from attending any practices for the child;
• allowing Yori or her designee to pick the child up from Helms' house for various specified reasons and return the child following the event; and
• giving Yori "final say" on "all athletic issues and sports participation, religious activities, school activities, medical issues, and all other issues regarding the minor child's participation, education and development."

The court ordered that Helms comply with the purge plan for 36 months.

On May 29, 2019, Helms filed a notice of appeal. The first appeal is docketed as case No. S-19-520.

### Motion for Commitment

In July 2019, while the first appeal was pending, Yori moved for Helms' commitment pursuant to the order of contempt. An amended motion additionally requested attorney fees and "such further and equitable relief as this Court deems just and equitable including, but not limited to, a modification of [Helms'] parenting time."

Yori alleged that Helms violated the decree of dissolution in numerous ways. She alleged Helms failed to timely reimburse her for the child's health care expenses, disparaged her in the child's presence, failed to promptly notify her of orthodontic appointments scheduled for the child, scheduled the child's orthodontic appointments during times that conflict with the child's other activities, and scheduled an appointment for the child regarding an ankle injury without informing Yori of the time.

Yori also alleged that Helms failed to abide by multiple provisions of the order of contempt. Specifically, she alleged that Helms refused to allow Yori to transport the child to and from athletic events, refused to commence counseling to address the family dynamic, refused to allow Yori to speak with the child on the telephone, and failed to reimburse Yori for half of the cost of the child's athletic activities.

During a hearing, Yori testified that it was important that she transport the child after events because Helms had removed the child from events early. Yori testified that a recurring problem was Helms' demanding to transport the child. On one occasion, Yori arrived at Helms' residence to pick the child up for a weightlifting session, but the child was still sleeping even though Yori communicated with Helms about the session earlier that morning.

Yori also presented evidence concerning Helms' failure to pay his share of expenses. Despite Yori's sending Helms a request for payment with attachments, including the explanation of benefits, Helms had not paid. Helms testified that he notified Yori that the explanation of benefits was not attached,

but that she did not respond. He said he would pay his share if he received those documents. Yori also requested payment for athletic expenses, including hotel charges for out-of-state tournaments. But she had not received payment for anything sent in a July 8, 2019, email. Helms did not have any evidence that he paid Yori for any expenses she had incurred since May 1, 2019.

On May 14, 2019, Yori sent Helms a copy of the court's order requiring him to immediately commence counseling with a mutually agreed-upon provider and included the names of three counselors. On May 28, she sent another email stating that she had not received any communication regarding which counselor Helms had selected. Helms testified that he made an appointment but had not seen a counselor yet.

Yori claimed that Helms refused to allow her to speak to the child on May 1 and 12, 2019. According to Helms, Yori called to say that the child did not answer and to ask Helms to have the child call her. Helms was not home at the time, so he sent the child a text, told him to call Yori, and "left it at that." On one occasion, Helms spoke with the child on the telephone for 38 minutes, exceeding his 20-minute telephone call limit, but he did not realize he had done so because he "usually do[es]n't keep track" when speaking to the child.

## Order of Commitment

On August 1, 2019, the court entered an order of commitment. It committed Helms to the Lancaster County Department of Corrections for 21 days.

The next day, the court entered a purge order. It ordered Helms to serve his 21-day commitment, but stated that he shall be released from custody so long as he met the following terms: paid $513.74 for past-due athletic expenses, paid $537.34 for past-due medical expenses, and paid $5,000 in attorney fees.

The purge order contained additional terms. The court ordered that Helms immediately commence counseling per the May 1, 2019, order of contempt. It declared that Yori "shall

have initial and final say on all medical, dental and ortho-
dontic appointments for the minor child." The order stated
that Helms

> is allowed to attend such appointments but shall not
> schedule such appointments nor transport the minor child
> to or from such appointments. [Yori] shall be contacted in
> the event [Helms] believes any medical, dental or ortho-
> dontic issue has arisen. [Yori] will be responsible for
> making any decision as to whether an appointment is nec-
> essary. [Helms] is granted authority only to take the minor
> child for emergent situations to the emergency room or
> Urgent Care during his parenting time. In the event he
> does so, he shall immediately notify [Yori] of the same
> including the reason for the emergent visit, and the loca-
> tion to which he will be taking the minor child.

The court reduced Helms' parenting time from a "7/7" sched-
ule to a "10/4" schedule, which it stated it was doing "[t]empo-
rarily" until December 19 or until further order of the court.
The court ordered Helms to not denigrate Yori in the child's
presence, to direct the child to do as Yori has decided, to sup-
port Yori's decisions related to the child, and to "not sit silently
with regard to those decisions."

The court set the matter for a review hearing on December
19, 2019. The court explained that the purpose of the review
hearing would be to allow Helms to prove his compliance
with the court's orders and to "adduce evidence as to the best
interest of the minor child to support [Helms'] request for rein-
statement of the original parenting time schedule." The court
stated that it would then address whether changes should be
made to the 10/4 parenting time schedule. During the hearing,
the court stated that if Helms was in compliance, the parent-
ing schedule would "likely" go back to the 7/7 schedule. The
court ordered that all provisions of prior court orders, except
those specifically modified, shall remain in full force and
effect. The court ordered Helms to comply with the purge
plan for 36 months and provided that if he failed to do so, "he

shall be immediately detained for a period of 21 days in the Lancaster County jail."

On September 3, 2019, Helms filed a notice of appeal, stating his intent to appeal from the August 2 purge order. The second appeal is docketed as case No. S-19-840.

## ASSIGNMENTS OF ERROR

In the first appeal, Helms assigns several errors to the district court's parenting plan modifications which he claims went beyond what was reasonably necessary and were punitive and therefore contrary to the law and the evidence. Specifically, he challenges (1) the "transportation provisions" of the original mediated parenting plan, (2) the modifications banning him from attending the child's athletic and piano practices, and (3) the "final say provisions" of the original mediated parenting plan.

In the second appeal, Helms assigns that the court erred by (1) reducing his parenting time by 43 percent, (2) making parenting plan modifications that were not reasonably necessary to enforce Yori's rights, and (3) finding he was in arrears on his obligation to pay half of the child's athletic expenses.

## STANDARD OF REVIEW

[1] In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which (1) the trial court's resolution of issues of law is reviewed de novo, (2) the trial court's factual findings are reviewed for clear error, and (3) the trial court's determinations of whether a party is in contempt and of the sanction to be imposed are reviewed for abuse of discretion.[1]

[2] Whether relief entered in a proceeding to enforce a parent's rights is reasonably necessary to enforce such rights is reviewed for an abuse of discretion.[2]

---

[1] *Braun v. Braun*, 306 Neb. 890, 947 N.W.2d 694 (2020).

[2] See *Martin v. Martin*, 294 Neb. 106, 881 N.W.2d 174 (2016).

[3] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[3]

## ANALYSIS

### First Appeal

The court modified the parenting plan after finding Helms to be in contempt. Helms does not contest the finding of contempt. Nor does he dispute the court's authority to modify the decree and parenting plan. Rather, he challenges particular modifications included in the order of contempt and purge plan. He claims that those modifications were punitive and were not reasonably necessary.

[4,5] Contempt proceedings may both compel obedience to orders and administer the remedies to which the court has found the parties to be entitled.[4] The sanction in a civil contempt proceeding is both remedial and coercive.[5] In a civil contempt proceeding, for the sanction to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert punishment or, at any time, bring it to an end.[6]

[6] A court's continuing jurisdiction over a dissolution decree includes the power to provide equitable relief in a contempt proceeding.[7] Neb. Rev. Stat. § 42-364.15(1) (Reissue 2016) explicitly authorizes a court to "enter such orders as are reasonably necessary to enforce rights of either parent including the modification of previous court orders relating to parenting time, visitation, or other access" and to "use contempt powers to enforce its court orders relating to parenting time, visitation, or other access."

---

[3] *Picard v. P & C Group 1*, 306 Neb. 292, 945 N.W.2d 183 (2020).

[4] *Martin v. Martin, supra* note 2.

[5] See *Braun v. Braun, supra* note 1.

[6] *Id.*

[7] *Martin v. Martin, supra* note 2.

Helms argues that certain modifications were punitive rather than coercive and that they were not reasonably necessary to protect Yori's rights under the parenting plan. He challenges as punitive the transportation provisions, the ban on his attendance at athletic and piano practices, and the final say provisions. He argues that the transportation provisions were punitive because the purpose was to ensure that the child make it to all of his activities; thus, it was unnecessary to give Yori control over transportation from the event. He also argues that they are punitive because there is nothing he can do to avoid them through his conduct—they are unconditional. Helms argues that there was no factual or remedial justification to ban him from attending the child's athletic and musical practices or to deprive him of final say over the child's participation in musical activities or any say regarding participation in athletic events. He contends that the alcohol and Soberlink testing provisions were not reasonably necessary to protect Yori's rights under the parenting plan.

In characterizing the modifications as punitive, Helms appears to be trying to impose a "least remedial measure" rule. But that is not consistent with statute. Section 42-364.15(1) empowers the court to solve the problem. Rather than a sanction, the modifications here were remedial measures to gain compliance. While it is possible that a modification could be so extreme that it qualifies as a sanction, the modifications here do not rise to that level.

[7] Where a situation exists that is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation.[8] Here, the court had the equitable authority, within the contempt proceeding, to modify the decree and parenting plan to remedy issues that led to contempt.

[8] The evidence showed that the remedial modifications were reasonably related to behavior prompting the contempt

---

[8] *Id.*

proceeding. Yori adduced evidence that Helms violated the parenting plan on numerous occasions and in numerous ways. Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.[9] There was evidence that Helms expressed an unwillingness to allow the child to participate in some events, failed to transport him to educational meetings and practices, and had him depart early from other events. The court also heard testimony about Helms' intoxication and inappropriate behavior at the child's athletic games and practices. And Yori testified that he had been confrontational. We conclude the modifications about which Helms complains were part of the equitable relief that the court is authorized to provide.[10] We find no abuse of discretion.

## Second Appeal

[9] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[11] This appeal presents two distinct jurisdictional issues: whether the district court possessed jurisdiction to further modify aspects of the parenting plan and whether Helms has appealed from a final order.

[10,11] Helms argues that the district court did not have jurisdiction to further modify the final say provisions of the parenting plan while an appeal concerning the final say provisions was pending. Generally, once an appeal has been perfected, the trial court no longer has jurisdiction.[12] But under Neb. Rev. Stat. § 42-351(2) (Reissue 2016), a trial court retains jurisdiction for certain matters. Section 42-351(2) provides:

---

[9] *Id.*

[10] See *id.*

[11] *Cullinane v. Beverly Enters. - Neb.*, 300 Neb. 210, 912 N.W.2d 774 (2018).

[12] *Burns v. Burns*, 293 Neb. 633, 879 N.W.2d 375 (2016).

> When final orders relating to proceedings governed by
> sections 42-347 to 42-381 are on appeal and such appeal
> is pending, the court that issued such orders shall retain
> jurisdiction to provide for such orders regarding support,
> custody, parenting time, visitation, or other access . . .
> or other appropriate orders in aid of the appeal process.
> Such orders shall not be construed to prejudice any party
> on appeal.

A trial court's jurisdiction under § 42-351(2) during the pendency of an appeal is properly characterized as jurisdiction in aid of the appeal process.[13]

A trial court's jurisdiction to modify a decree regarding an issue which is pending appeal is not unlimited. Section 42-351(2) does not grant a trial court authority to hear and determine anew the very issues then pending on appeal and to enter permanent orders addressing these issues during the appeal process.[14] In the first appeal, Helms opposed modifications to provisions regarding transportation, the ban on his attendance at athletic and piano practices, the final say provisions, and his alcohol use and testing. Following the filing of the notice of appeal, the district court held further hearings, but it did not make new determinations about the identical issues being appealed. Rather, in the August 2019 purge order, the court set forth terms for Helms to comply with in order to be released from jail. This falls within the court's continuing jurisdiction to provide for such orders regarding parenting time or other access.

[12,13] Yori contends that the August 2019 order is not a final, appealable order. For an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a final order or a judgment.[15] A judgment is the final determination

---

[13] See *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016).

[14] *Burns v. Burns, supra* note 12.

[15] *State v. Fredrickson*, 306 Neb. 81, 943 N.W.2d 701 (2020).

of the rights of the parties in an action.[16] Every direction of the court made or entered in writing and not included in a judgment is an order.[17] While all judgments[18] not incorrectly designated as such[19] are appealable, an order may be appealed only if a statute expressly makes the order appealable or the order falls within the statutory definition of a final order.[20]

[14] Under our final order statute,[21] to be a final order subject to appellate review, the lower court's order must (1) affect a substantial right and determine the action and prevent a judgment, (2) affect a substantial right and be made during a special proceeding, (3) affect a substantial right and be made on summary application in an action after a judgment is rendered, or (4) deny a motion for summary judgment which was based on the assertion of sovereign immunity or the immunity of a government official.[22] Proceedings regarding modification of a marital dissolution are special proceedings.[23] And we have described a contempt order as one made upon a summary application in an action after judgment.[24] Here, our focus is not upon the procedural classification under § 25-1902, but, rather, whether the order affected a substantial right of one or more parties.[25]

[15,16] The inquiry of whether a substantial right is affected focuses on whether the right at issue is substantial and whether the court's order has a substantial impact on that

---

[16] Neb. Rev. Stat. § 25-1301(1) (Cum. Supp. 2018).

[17] *State v. Fredrickson, supra* note 15.

[18] See § 25-1301(1) (defining judgment).

[19] See Neb. Rev. Stat. § 25-1315(1) (Reissue 2016).

[20] See *State v. Fredrickson, supra* note 15.

[21] See Neb. Rev. Stat. § 25-1902 (Supp. 2019).

[22] See *State v. Fredrickson, supra* note 15.

[23] *Tilson v. Tilson*, 299 Neb. 64, 907 N.W.2d 31 (2018).

[24] See *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018).

[25] See *State v. Fredrickson, supra* note 15.

right.[26] Whether an order affects a substantial right depends on whether it affects with finality the rights of the parties in the subject matter.[27] An order affects a substantial right when the right would be significantly undermined or irrevocably lost by postponing appellate review.[28]

[17] The duration of an order is relevant to whether it affects a substantial right.[29] In several cases, we have determined that orders temporarily affecting a parent's custodial, visitation, or educational rights were not final.[30] With respect to a visitation order in a guardianship proceeding, we stated that where a final guardianship hearing was scheduled for 3 weeks later, an order that effectively denied visitation until that hearing did not affect a substantial right because "the length of time that [the mother's] relationship with [the child] was to be disturbed was brief, and the order was not a permanent disposition."[31]

Here, the court did not intend its order to be a permanent disposition. The order stated in part:

**IT IS FURTHER ORDERED** that this matter be set for review hearing on **Thursday, December 19, 2019 at 1:30 p.m.** At such hearing, [Helms] shall be allowed 45 minutes to present evidence. [Yori] shall be awarded a like amount of time. The purpose of the review hearing shall be to allow [Helms] to prove his compliance with the Court's orders and adduce evidence as to the best interest of the minor child to support [Helms'] request for reinstatement of the original parenting time schedule.

---

[26] See *id.*

[27] *Id.*

[28] *Id.*

[29] *Tilson v. Tilson, supra* note 23.

[30] See, *id.*; *In re Interest of Danaisha W. et al.*, 287 Neb. 27, 840 N.W.2d 533 (2013); *Steven S. v. Mary S.*, 277 Neb. 124, 760 N.W.2d 28 (2009); *Gerber v. Gerber*, 218 Neb. 228, 353 N.W.2d 4 (1984).

[31] *In re Guardianship of Sophia M.*, 271 Neb. 133, 139, 710 N.W.2d 312, 317 (2006).

> The Court notes it is specifically interested in [Helms']
> compliance with the Court's orders and the information
> from Dr. Williams. The Court will address what changes,
> if any, should be made to the 10/4 parenting time sched-
> ule as in the best interest of the minor child.

And the court orally advised that it was changing Helms' par-
enting time "[t]emporarily" and that the "temporary order"
would be in effect until December 19, 2019. The court antici-
pated that the parenting schedule would "likely" revert to the
7/7 schedule if Helms complied with the purge order.

That the court planned to revisit the parenting time schedule
in 4½ months demonstrates the temporary nature of the order.
We recognize that the length of time involved here is perhaps
on the outer edge of what would be considered a temporary
disturbance, but we cannot say the reduction in parenting time
from a 7/7 schedule to a 10/4 schedule for 4½ months affects
a substantial right.

Because the order did not affect a substantial right of Helms,
it is not a final order that may be appealed under § 25-1902.
We dismiss the second appeal for lack of jurisdiction.

## CONCLUSION

In the first appeal, we conclude that the court's modifica-
tions were part of the equitable relief that it had the authority
to provide to remedy issues that led to contempt. We find no
abuse of discretion and affirm the district court's judgment.
Because the second appeal was not taken from a final order, we
dismiss it for lack of jurisdiction.

Judgment in No. S-19-520 affirmed.
Appeal in No. S-19-840 dismissed.